JAMES LAFORTE, JR.
REGISTER NO. 60824-050
METROPOLITAN DETENTION CENTER
P.O. BOX 329002
BROOKLYN, NEW YORK 11232

DECEMBER 16, 2025

THE HONORABLE MARK A. KEARNEY
UNITED STATES DISTRICT JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
601 MARKET STREET
PHILADELPHIA, PA 19106

> Re: United States v. James Laforte, Jr., Docket No. 23-CR-198 (MAK)

Dear Judge Kearney:

Defendant respectfully submits this letter in response to the Government's letter of December 10, 2025, and as a supplement to Defendant's emergency letter-motion for reconsideration of the Court's order denying compassionate release under 18 U.S.C. 3582(c)(1)(A). For the reasons that follow, the Court should appoint counsel, promptly schedule this matter for a conference and/or hearing, and reconsider its order denying relief under 18 U.S.C. 3582(c)(1)(A).

As a preliminary matter, as previously stated in Defendant's letter-motion of November 25, 2025, motions for reconsideration are permitted in criminal cases. See, United States v. Fiorelli, 337 F.3d 282, 286 (3d Cir. 2003).

The Government's recent submission contains a host of factually inaccurate assertions, which are indisputably an attempt to delay and/or deny appropriate medical care to Defendant for a very serious conditions that shorten his life expectancy and will almost certainly result in irreparable harm, serious physical injury, and/or death. Defendant, again, pleads with this Court to intervene to ensure his safety and well-being.

I.    FMC DEVENS HOUSES PRETRIAL DETAINEES FOR THE PURPOSE OF PROVIDING CARE.

Untile reviewing the Government's response, Defenant was unaware that the Legal Department at MDC Brooklyn had informed the Clerk of the Honorable Frederic Block, U.S. District Judge (EDNY) that, due to the pendency of this Defendant's Eastern District of New York criminal matter, and the fact that FMC Devens is a designated facility, transfer of Defendant to FMC Devens was not "permitted." This representation was designed to mislead the Court to believe that pretrial detainees are not provided medical care at FMC Devens because of their pretrial status. Nothing could be further from the truth, and the Government, prior to filed its letter of December 10, 2025, either knew or should have known that pretrial detainees often received in-patient care at FMC Devens. Indeed, one of the two notorious Boston Marathon Bombers -- Dzhokhar Tsarnaev (Register No. 95079-038) -- was  housed at FMC Devens (pretrial) receiving care injuries he suffered in a shootout with law enforcement officers affecting his arrest. Derrick Sanders (Register No. 75737-053), a dialysis pretrial detainee was also housed at the facility in 2008. A recent United States Department of Justice, Office of Inspector General Report (No. 25-009) issued in December 2024, expressly notes that FMC Devens provides in-patient psychiatric care for pretrial inmates and restorative care for "pretrial detainees..." Id. at 5.

It is therefore indisputable that Defendant's pretrial detainee status in now way prevents the Bureau of Prisons from providing him the care that he can only receive at FMC Devens given the severity of his medical condition. The decision not to provide that care is inexplicable, and the fact that the Bureau of Prisons and the Government has deliberately misinformed both Judge Block and your Honor is despicable, reprehensible, and contemptuous.

FMC Devens is the only facility that can afford Defendant the treatment that even the Bureau of Prisons has openly acknowledged is needed. The explanation for not being able to provide the care is demonstrably false, and as indicated in Defendant's original moving papers, speaks to the real reason Defendant is being denied appropriate care: The exorbitant cost of the care.

In view of the indisputable facts that Defendant suffers from a "condition that requires long term [and] specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," 18 U.S.C. 3582(c)(1)(A) and U.S.S.G. 1B1.13(b)(1)(C), authorizes the Court to modify the term of imprisonment imposed in this case, and the Court should exercise such discretion here. In the alternative to reducing the term of imprisonment, Defendant respectfully requests that the Court modify the term by recommending that Defendant serve out his sentence in a Residential Reentry Center so that he can secure the much needed medical care after arranging for the expenses for such to be covered.

II.    DEFENDANT HAS NOT BEEN PROVIDED THE CARE ALLEGED.

A.    Steroid Management.

In April 2025, Health Services Staff at MDC Brooklyn decided to discontinue prednisone as treatment for Defendant's debilitating condition. Shortly thereafter, during an examination by a specialist in the community, the prednisone dosage was increased. This divergence reflects a lack of coordinated care and is inconsistent with the Government's claim of disease stability. Moreover, corticosteroids are not curative for IgG4-related disease and long term reliance without appropriate specialist oversight presents recognized clinical risks.

The Government also notes that Defendant has been prescribed Mirilax, but Mirilax has not therapeutic benefit in the treatment of autoimmune disease, and to suggest such is ludicrous and telling.

B.    Nutritional Care.

Contrary to the information provided to the Court by the Government, Defendant did not attend any outside dietary consultation on April 13, 2025. In fact, Defendant was not removed from MDC Brooklyn at all on that date, for any reason. Further, Defendant has never met with a dietician while at MDC Brooklyn, despite the Government's claim to the contrary.

C.    Laboratory Monitoring.

Appropriate management and care of IgG4-related disease requires regular laboratory monitoring. Despite this in-disputably obvious fact, between December 2024 and June 2025, no testing or monitoring was conducted at all. Further, between June 2025 and November 2025, no such monitoring was conducted. It is not debatable that Defendant's medical condition and care are being neglected and largely ignored. Had Defendant been housed at FMC Devens, there is no doubt that such care would have been provided, as it is routine as such a facility. Notably, once testing resumed, the results showed elevated bilirubin levels following the prednisone taper, a clear indication of disease progression as opposed to control.

D.    Diagnostic Testing.

On December 12, 2024, a Comprehensive Metabolic Panel (CMP) and PET-CT scan were ordered. As of the date of this submission, neither of the requested tests have been conducted. These tests are necessary to assess systemic involvement and disease activity.

E.    Specialist Care.

The Government reported to the Court that Defendant was seen at Mount Sinai Hospital on December 4, 2025. In fact, not only was Defendant not taken to Mount Sinai, he was not seen by anyone. To be sure, Defendant was transported to an Ear, Nose, and Throat facility located at 319 Eastern Parkway in Brooklyn, New York -- which is not a Mount Sinai facility, where he was left to wait in a transportation vehicle for nearly two hour with no access to a bathroom -- despite his medical condition compelling frequent trips to the bathroom. Despite the wait, Defendant was not seen by anyone and was returned to MDC Brooklyn. Insofar as the BOP staffers responsible for transporting Defendant made the mistake and brought him to the wrong place, such speaks volumes of the competence and capability of MDC Brooklyn staff to ensure life preserving and life saving care. The level of incompetence is stifling. Unless the Court intervenes, Defendant will almost certainly perish at the hands of MDC Brooklyn staff, despite his repeated cries for help.

F.    Sick Call Utilization.

The Government's reliance of sick call frequency to minimize the seriousness of Defendant's condition, or the lack of care being provided, is offensive. Defendant is not afforded an opportunity to make repeated sick-call requests, as the system limits the number of requests an inmate may submit. Consequently, the number of requests submitted does not reflect the number of complaints or the frequency with which Defendant would complain but for limits being placed on electronic sick-call requests.

G.    Dietary Concerns & Commissary Purchases to Supplement Diet.

The Government's submission makes clear that Defendant is expected to make his own diet through commissary purchases. The diet provided by the Bureau of Prisons is clearly contrary to, and significantly conflicts with Defendant's condition. The idea that Defendant, who has no control over what foods the prison serves, could be responsible for his diet is not only ridiculous but conscience shocking.

In an unrelated case in the Southern District of New York, the Government made a similar claim that a defendant who suffers from diabetes had control of his diet through commissary purchases, despite the fact that the food provided at MDC Brooklyn conflicted with his dietary and medical needs. In that case, the judge considering the claim was none to happy:

THE COURT: Look, I have to tell you on that one I find it appalling that somebody who needs a special diet for medical reasons needs to make commissary purchases in order to have the diet that he needs. I don't see how under any circumstances that could be considered acceptable. What if somebody doesn't have funds to buy things at the commissary; their health is allowed to deteriorate? That is not an appropriate answer, in my view.

United States v. Christopher E. Reese, Docket No. 12 Cr. 629 (VM)(RFT)(S.D.N.Y. Dec. 9, 2024), Trans. Preliminary Hearing at 49:18-25.

Clearly, Defendant is being denied both essential health care and diet which is certain to result in serious bodily injury or death. The Court must revisit the issue, and appoint counsel. Had counsel been appointed, the Government would not have submitted a response riddled with inaccuracies and falsehoods designed to deceive the Court and prevent this Defendant from getting the care to which he is constitutionally entitled.

CONCLUSION

For the reasons stated, the Court should grant this application in its entirety.

Respectfully submitted,

JAMES LAFORTE, JR.

cc: The Hon. Frederic Block, U.S. District Judge
    U.S. Attorneys Office (E.D. Pa.)

-3-

James Laforte Jr.
Reg. No. 60864-050
M.D.C. Brooklyn
P.O. Box 329002
Brooklyn, New York 11232

Legal Mail

Filed 12/23/25   Document 381   -cr-00198-MAK   P

MID-ISLAND NY 117

19 DEC 2025   PM 2

DEC 22   25

Honorable Mark A. Kearney
U.S. District Judge
U.S. District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

19106-172999

METROPOLITAN DETENTION CENTER
80 29TH ST, BROOKLYN, NY 11232
The enclosed letter was processed through
mail procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or a problem over
which this facility has jurisdiction, you may wish
to return the material for further information
or clarification. If the writer encloses correspondence
for forwarding to another addressee, please
return the enclosure to the above address.